REQUESTED BY: Sen. John Wightman
Chairman, Executive Board
Nebraska State Legislature
The One-Hundred-First Nebraska Legislature began its First Special Session on November 4, 2009. On behalf of the Legislature's Executive Board, you subsequently presented three separate opinion requests to us requesting our views as to whether nine bills introduced during the special session "are within the scope of the [Governor's] call." Those bills are LB 6, LB 7, LB 8, LB 9, LB 11, LB 13, LB 14, LB 15 and LB 16. We previously addressed whether LB 15 is within the scope of the call in Op. Att'y Gen. No. 090010 (November 6, 2009). We will discuss each of the remaining bills referenced in your requests separately below. *Page 2 
 GOVERNOR'S CALL
The Governor convened the special session at issue, under authority of art. IV, § 8 of the Nebraska Constitution, by issuance of a Proclamation dated November 2, 2009. The Governor's Proclamation called the Legislature into special session to consider and enact legislation on the following subjects:
 1. To reduce or eliminate appropriations and reappropriations approved by the 101st Nebraska Legislature;
 2. To reduce or eliminate certain transfers from the State General Fund;
 3. To authorize, increase, or make certain transfers to the State General Fund or to certain cash funds;
 4. To modify or eliminate intent language and earmarks accompanying appropriations approved by the 101 Legislature;
 5. To adopt statutory modifications necessary to reduce state aid appropriations and make formula adjustments contained in the Tax Equity and Educational Opportunities Support Act; and
 6. To appropriate funds for the necessary expenses of the extraordinary session herein called.
 APPLICABLE LAW
As noted above, this is actually the second opinion that we have completed in connection with this special session of the Legislature. The first, Op. Att'y Gen. No. 090010 (November 6, 2009), was prepared at the request of Senator White, and discussed whether LB 15 was within the scope of the call. Opinion No. 090010 contains an analysis of the applicable law regarding the scope of the Governor's call which summarizes previous opinions from this office and cases from the Nebraska Supreme Court in that area. Rather than repeat that entire analysis here, we will simply refer you to Opinion No. 090010. Suffice it to say that the Governor does have the power and authority under art. IV, § 8 of the Nebraska Constitution to limit the subjects which the Legislature may consider at a special session. In that regard, the Legislature may enact legislation during a special session which relates to, is germane to, or has a natural connection with the purpose for which it was convened. *Page 3 
 LB 6
would amend portions of the Nebraska Criminal Code dealing with offenses against animals, portions of the Nebraska Statutes pertaining to Criminal Procedure and portions of the Nebraska Commercial Dog and Cat Operator Inspection Act, Neb Rev. Stat. §§ 54-625 through 54-643 (2004, Cum. Supp. 2008, Supp. 2009). In essence, the amendments contained in the bill would remove statutory provisions which require inspections and the payment of inspection fees in connection with the licensure of commercial breeders, boarding kennels, animal shelters and other entities keeping and selling pet animals.
In our Opinion No. 090010, we characterized the purpose for which the present special session was convened as "generating additional monies for the State's General Fund by reducing appropriations, eliminating transfers from the General Fund, authorizing and making transfers to the General Fund, and reducing state aid appropriations." Op. Att'y Gen. No. 090010 at 4 (November 6, 2009). We fail to see how repealing statutory provisions requiring inspections for entities keeping and selling pet animals and discontinuing the collection of fees for those inspections relate to or are germane to that purpose. And, those amendments do not fall within any of the specific subjects set out in the Governor's call. As a result, we conclude that LB 6 is beyond the scope of the call.
 LB 7
This short bill would amend Neb. Rev. Stat. § 2-2634 (2007), part of the Nebraska Statutes dealing with pesticides. That statute establishes fees for registration of pesticides in Nebraska, and allocates those fees among the Noxious Weed Cash Fund, the Buffer Strip Incentive Fund, the Natural Resources Water Quality Fund and the Pesticide Administrative Cash Fund. LB 7 would amend § 2-2634 so as to increase the monies allocated to the Noxious Weed Cash Fund and decrease the monies allocated to the Buffer Strip Cash Fund. The purpose of that change in allocations is apparently "to replace remaining general funds supporting the Department of Ag's responsibilities under the Noxious Weed Control Act."Introducer's Statement of Intent for LB 7, 101st Neb. Leg., 1st Special Sess. at 1.
The third subject listed in the Governor's call allows legislation "to authorize, increase, or make certain transfers . . . to certain cash funds," and it could be argued that LB 7 transfers monies to the Noxious Weed Cash Fund. However, it appears to us that "transfer," as it is used in the call, contemplates the movement of monies from one fund to another, not the allocation of fees in the future. In addition, LB 7 would not authorize, increase or make a transfer to the Buffer Strip Cash Fund. Instead, it would reduce monies allocated to that fund. Finally, we do not believe that replacing general *Page 4 
fund monies taken from a particular cash fund is related to the general purpose of this special session as it is discussed above. Consequently, LB 7 is outside the scope of the Governor's call.
 LB 8
This proposed bill would amend Neb. Rev. Stat. § 81-1201.21 (2008) which created the Job Training Cash Fund administered by the Department of Economic Development. That cash fund has received funds from the Department of Labor Employment Security Special Contingent Fund and from the Cash Reserve Fund and is used to support job training activities. LB 8 would specifically provide that no transfers of monies may be made from the Job Training Cash Fund to the General Fund.
As discussed above, the intended purpose of the special session is to reduce a budget shortfall by generating additional monies for the State General Fund. A provision to prohibit the transfer of funds from the Job Training Cash Fund to the General Fund does not appear to be germane or related to the overall purpose of the special session. In addition, LB 8 does not fit within the specific subjects set out in the Governor's call, and is actually contrary to item number 3 which is "to authorize, increase, or make certain transfers to the State General Fund. . . ." For those reasons, it is our opinion that LB 8 would likely be deemed to be outside the scope of the Governor's call for the special session.
 LB 9
LB 9 would eliminate a future transfer of funds collected from a corn and grain sorghum excise tax under the Ethanol Development Act to the Water Resources Cash Fund on January 1, 2013. LB 9 would also eliminate a transfer of all unobligated funds in the Ethanol Production Incentive Cash ("EPIC") Fund on December 31, 2012 to the Water Resources Tax Fund.
In order to eliminate these future transfers, revisions to both the Water Resources Cash Fund, Neb. Rev. Stat. § 61-218 and the Ethanol Development Act, Neb. Rev. Stat. § 66-1330 et seq., are necessary. The Ethanol Development Act currently requires collection of an excise tax on corn and grain sorghum to be deposited into the EPIC Fund until December 31, 2012. Neb. Rev. Stat. §§ 66-1345.01; 66-1345.02. Then, on January 1, 2013, the excise tax is to be deposited in the Water Resources Cash Fund. Neb. Rev. Stat. §§ 61-218; 66-1345.02. LB9 is silent as to where such excise tax funds would be deposited after December 31, 2012.
We have reviewed LB 9 and its germaneness to the scope of the call delineated by the Governor's Proclamation and believe it to be beyond the scope of the call of this Special Session. Of the subjects set forth in the Governor's Proclamation, Nos. 1, 2, *Page 5 
and 4-6 clearly do not apply because LB 9 does not involve an appropriation or reappropriation approved by the 101st Legislature, and because it involves an excise tax, not a transfer from the General Fund. LB 9 also does not involve intent language or earmarks accompanying appropriations approved by the 101st Legislature, state aid appropriations, or necessary expenses for the special session.
We also believe LB 9 falls outside the scope of the third subject listed in the Governor's Proclamation. The first part of LB 9, which would eliminate the deposit of excise taxes collected in 2013 into the Water Resources Tax Fund, does not effectuate a movement of monies from one fund to another, but instead addresses where taxes collected in the future will be deposited. The second part of LB 9, which eliminates the transfer of unobligated funds in the EPIC Fund to the Water Resources Tax Fund, also does not fall within the scope of the call because it does not result in a transfer into the State General Fund or certain cash funds, but insteadcancels such a transfer.
 LB 11
This proposed legislation would amend various state statutes creating specific cash funds to be utilized in the promotion and development of certain agricultural products. The cash funds which would be impacted by LB 11 include the Nebraska Potato Development Fund, the Nebraska Wheat Development, Utilization, and Marketing Fund, the Nebraska Poultry and Egg Development, Utilization, and Marketing Fund, the Nebraska Corn Development, Utilization, and Marketing Fund, the Dry Bean Development, Utilization, Promotion, and Education Fund, the Nebraska Dairy Industry Development Fund, the Grain Sorghum Development, Utilization and Marketing Fund and the Winery and Grape Producers Promotional Fund. The proposed bill would provide that "no part of the funds deposited in the fund or of federal funds or other funds solicited in conjunction with research or demonstration programs shall lapse to the general fund" with regard to each of these statutorily-created cash funds.
After analyzing LB 11 in light of the Governor's call, it appears to us that a provision to prohibit the lapse of funds from these various cash funds to the General Fund is not germane or related to the intended purpose of the special session. The Nebraska Constitution provides that funds in the state treasury may be withdrawn only pursuant to appropriation by the Legislature. Neb. Const. art. III, §§ 22 and 25. Unexpended balances in cash funds at the close of a fiscal year generally lapse back to the state treasury unless they have been reappropriated by the Legislature. Therefore, prohibiting lapses of monies to the State General Fund appears contrary to item number 1 of the Governor's Proclamation, which is "to reduce or eliminate appropriations and reappropriations approved by the 101st Legislature." Prohibiting such lapses also does not appear to fall within the intended overall purpose of the special session to reduce a *Page 6 
budget shortfall by generating additional monies for the State General Fund. For those reasons, it is our opinion that LB 11 would likely be deemed to be outside the scope of the Governor's call for the special session.
 LB 13
LB 13 proposes to amend the Nebraska sales and use tax statutes by eliminating exemptions for transactions occurring on or after January 1, 2010, and before January 1, 2011. The bill would further establish, commencing January 1, 2010 and until January 1, 2011, a tax rate of sixty-five hundredths percent to be applied to these formerly exempt transactions during this one year period.
The Governor's Proclamation calling the Legislature into special session does not deal with the State budget in general terms, but, rather, only specific aspects of the budget, as discussed above. LB 13, as stated in its title, is an act "relating to revenue and taxation" which would amend the sales and use tax statutes by eliminating exemptions for one year and establishing a tax rate for transactions previously exempted. LB 13 is not "related to" or "germane to" any of the specific subjects listed in the Governor's call, and does not have a natural connection with the purpose for which the Legislature was convened. Accordingly, we conclude the bill is outside the scope of the call.
 LB 14
This bill would amend Neb. Rev. Stat. § 54-197 (2004) which created the Nebraska Brand Inspection and Theft Prevention Fund. That cash fund is used by the Nebraska Brand Committee to administer and enforce the Livestock Brand Act. LB 14 would prohibit transfers from this fund to the State General Fund. LB 14 would also prohibit the lapse of funds deposited in this fund to the State General Fund.
The provisions of LB 14 which would prohibit the transfer or lapse of funds from the Nebraska Brand Inspection and Theft Prevention Fund to the General Fund do not appear to be germane or related to the overall purpose of the special session as they would not reduce the budget shortfall by generating additional monies for the State General Fund. Moreover, as discussed above, it appears clear that the Governor has limited the special session to legislating on "a specified phase of a general subject," as indicated by item numbers 1 through 6 of the Governor's Proclamation. Prohibiting transfers or lapses of monies to the General Fund appears contrary to item numbers 1 and 3 of the Governor's Proclamation. For these reasons, it is our opinion that LB 14 would likely be deemed to be outside the scope of the Governor's call. *Page 7 
 LB 16
LB 16 would amend those statutes which establish the Agricultural Opportunities and Value-Added Partnerships Cash Fund, the Microenterprise Development Cash Fund and the Building Entrepreneurial Communities Cash Fund. With regard to each fund, LB 16 would prohibit the lapse of funds to the General Fund and prohibit any reduction to General Fund appropriations for fiscal years 2009-10 and 2010-11.
For the reasons stated above in our discussion of LB 11 and LB 14, prohibiting the lapse of funds to the General Fund would likely be found to be outside the scope of the Governor's call. Similarly, prohibiting any reduction in General Fund appropriations would likely be found neither germane nor related to the overall purpose of the special session. Such prohibitions also do not fit within any of the subjects listed in the Governor's Proclamation and appear contrary to item number 1 of the Governor's Proclamation, which is "to reduce or eliminate appropriations and reappropriations approved by the 101st Nebraska Legislature."
Sincerely,
JON BRUNING Attorney General
___________________________
Dale A. Comer, Assistant Attorney General
L. Jay Bartel, Assistant Attorney General
Lynn A. Melson, Assistant Attorney General
Katherine J. Spohn, Special Counsel to the Attorney General
Approved:
 ___________________________ Attorney General *Page 1